## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **GARY DON LITTLE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CIV-05-202-M** |
| | ) | |
| **RON WARD, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>REPORT AND RECOMMENDATION</u>

Plaintiff, a state prisoner appearing pro se, has filed this action pursuant to 42 U.S.C. § 1983, alleging the violation of certain constitutional rights based on prison officials' refusal to provide a special diet. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). In his complaint Plaintiff names as Defendants Ron Ward, Director of DOC[1] and the following thirteen individual Defendants associated with the James Crabtree Correctional Center (JCCC): Denis Burrell, chaplain; Eric Franklin, warden; Jerry Chrisman, deputy warden; Katryna Frech, medical administrator; Don Letourneau, food service manager; Dr. Troutt, D.O.[2]; Roy Arian, P.A.[3]; Dr. Brandon Bates, psychologist; Don Jay, food service supervisor; Rodney Redman, security major; Blake Culp, food service

---

[1]Since Plaintiff filed his complaint, Ron Ward resigned his position as Director of DOC, and Justin Jones has been named as the new DOC Director.

[2]Plaintiff has spelled this Defendant's name as "Trout," but the signature on the waiver of summons reflects "Troutt."

[3]In the caption of the complaint, Plaintiff names this Defendant as "Dr. Roy P.A.," and in the body of the complaint, he lists this Defendant as "Dr. Arian Roy." Complaint at 1 and 2(a). However, the signature on the waiver of service of summons reflects "Roy Arian" and the Special Report identifies Roy Arian as a physician's assistant at JCCC. Special Report at 2.

supervisor; Suzie Salinas, housing unit manager; and Robbie Parker, senior case manager (hereinafter "Defendants").   Defendants have filed a motion to dismiss ("MTD"), and alternatively for summary judgment, alleging in part that the complaint should be dismissed because Plaintiff has failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a).   [Doc. No. 36]  Plaintiff has responded to the motion [Doc. No. 42] and thus, the motion is at issue.   A Special Report ("S.R."), which the Court ordered prepared pursuant to *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978), has also been filed. [Doc. No. 35].   For the reasons stated below, the undersigned finds that Plaintiff has failed to administratively exhaust his § 1983 claims against the named Defendants as required by § 1997e(a) and *Ross v. County of Bernalillo*, 365 F.3d 1181, 1189 (10th Cir. 2004).[4]   The undersigned therefore recommends that Defendants' motion to dismiss be granted and that the complaint dismissed.

I.   Background and Plaintiff's Claims

The following facts leading to the present civil rights action are largely uncontroverted.   Plaintiff arrived at the JCCC facility on August 6, 2004, and on August 9, Plaintiff requested to be placed on a vegetarian diet.   Complaint at 2; S.R., Attachment ["Att."] 6 at p. 1.   Chaplain Burrell approved Plaintiff's request, and Plaintiff was placed on the "basic vegetarian diet."   S.R., Att. 6 at p. 3.   On September 28, 2004, Burrell approved Plaintiff's subsequent request to be placed on a restricted vegetarian diet, for unspecified "religious reasons."   S.R., Att. 6 at pp. 1 and 4; *see also* Complaint, Att. G.

---

[4]Because the undersigned finds that the complaint should be dismissed for failure to exhaust administrative remedies, Defendants' alternative arguments for dismissal or summary judgment have not been addressed.

On November 9, 2004, Plaintiff went to health services and told Arian that according to food service manager Letourneau, if he obtained a memo from health services for no bean, rice, or pasta, food services would honor it.  S.R., Att.  7 at p. 5.  Arian gave Plaintiff a memo for the special diet restrictions Plaintiff requested.  S.R., Att. 7 at p 6.  Shortly thereafter, Letourneau called Arian and advised that he had not advised Plaintiff to obtain such a memo, and Arian instructed Letourneau to void the diet memo.  S.R., Att.  7 at p.5; Att.  9.  *See also* Complaint, Att.  D.

On January 19, 2005, food service supervisor Culp reported that Plaintiff bypassed a vegetarian food tray and took a regular tray with meat items; pursuant to food service manager Letourneau's instructions, Plaintiff was removed from the restricted vegetarian diet list.  S.R., Att. 9 at pp. 3, 11 and 12.  On February 7, 2005, Plaintiff refused a regular meal, stating that he was a vegetarian, and informed prison officials that he was declaring a hunger strike.  S.R., Att. 10 at pp.  1-2; *see also* Complaint at 2.  On that date, Plaintiff was placed in segregation housing pending investigation.  S.R., Att. 12 at 1.  Plaintiff was evaluated by medical staff, lab work and daily weight monitoring was ordered, and dietary supplements were ordered for Plaintiff.  S.R., Att. 7 at p.11.  Plaintiff ended his hunger strike on February 11, 2005.  S.R., Att.  7 at p. 8.

Plaintiff's complaint was signed at JCCC on February 14, 2005, and was filed on February 18, 2005.  On February 17, 2005, Plaintiff was transferred from JCCC to Oklahoma State Reformatory (OSR) and on May 5, 2005, he was placed at the Lexington Correctional Center (LCC).  S.R., Att. 2; Att. 13.

3

Based on the foregoing facts, Plaintiff alleges three constitutional violations.  In Count One of the complaint, Plaintiff alleges a denial of his First Amendment right to freely exercise his religion.  As factual support for this claim, Plaintiff alleges that on January 19, 2005, Defendant Letourneau removed him from the restricted vegetarin diet list, and on January 27, 2005, Defendant Chrisman, along with Defendant Burrell, took "the First Amend. into their own hands and denied me the freedom of religion." Complaint at 3.  In Count Two, Plaintiff alleges the denial of his Eighth Amendment right to be free from cruel and unusual punishment.  As support for this claim, Plaintiff alleges that Defendants Letourneau, Franklin, Bates, Arian and Troutt conspired to remove him from the list of inmates approved for a vegetarian diet.  He further alleges that prison officials' conduct during his hunger strike amount to deliberate indifference. *Id.*  In Count Three, Plaintiff alleges the denial of his Fourteenth Amendment right to due process and equal protection.  In support Plaintiff alleges that "there are other restricted vegetarians on this yard," that the denial of a restricted vegetarian diet is based only on the word of Defendant Culp and that he has been denied the diet in retaliation. Complaint at 4.  Plaintiff requests injunctive relief, specifically a "permanent order for a vegetarian diet," and damages "for pain and suffering and mental anguish."  Complaint at 5.

II. <u>Failure to Exhaust Administrative Remedies</u>

Defendants seek dismissal of Plaintiff's complaint in part for failure to exhaust his administrative remedies, a requirement mandated by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), which provides:

> "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

The United States Supreme Court has found that the mandate of Congress is clear: exhaustion is <u>required</u>. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). Moreover, the provision applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532. *See also Booth v. Churner*, 532 U.S. 731 (2001). Even where the "available" remedies would appear to be futile with respect to providing the kind of remedy sought, the prisoner must exhaust the administrative remedies available. *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citing *Booth*, 532 U.S. at 740).

The Tenth Circuit has found that § 1997e(a) "imposes a pleading requirement on the prisoner" and that "[t]o ensure compliance with the statute, a prisoner must provide a comprehensible statement of his claim and also either attach copies of administrative proceedings or describe their disposition with specificity." *Steele v. Federal Bureau of Prisons*, 355 F.3d 1204, 1211 (10th Cir. 2003). Defendants may raise the exhaustion issue in a dispositive motion, "to be addressed promptly by the court." *Id.* Under these circumstances, the "court may consider the attached administrative materials" provided by the plaintiff, or if none are provided by the plaintiff then the court may consider

administrative materials or a declaration submitted by the defendant. *Id.* Additionally, the "total exhaustion" rule applies to suits subject to § 1997e(a). *See Ross v. County of Bernalillo*, 365 F.3d 1181, 1184, 1189 (10th Cir. 2004). Under this rule, the Court should dismiss a lawsuit in its entirety when at least one claim is unexhausted. *See id.* ("We agree that the PLRA contains a total exhaustion requirement, and hold that the presence of unexhausted claims in Ross' complaint required the district court to dismiss his action in its entirety without prejudice."). *See also Wilson v. Ward*, No. 04-6123, 2005 WL 256575, at *1 (10th Cir. Feb. 3, 2005).[5] The Tenth Circuit has recognized, however, that if prison officials prevent a prisoner from proceeding with exhaustion of administrative remedies, prison officials render that remedy unavailable such that a court will deem the procedure exhausted. *Baughman v. Harless*, No. 04-6256, 2005 WL 1806442, at *4 (10th Cir. Aug. 2, 2005).

DOC's established administrative grievance policy provides inmates with a three-step procedure for grieving their complaints. Defendants' MTD, Ex. 1 (DOC Policy OP-090124) (eff. Mar. 23, 2004). This procedure requires that an inmate first file a request to staff. *Id.*, OP-090124, IV(B). If the inmate remains dissatisfied, he must then file a grievance with the facility's reviewing authority. *Id.*, OP-090124, V(A), (B), and (C). Finally, to appeal an adverse determination from the facility reviewing authority, the inmate must appeal to the DOC administrative review authority. *Id.*, OP-090124, VII(A), (B), (C), and (D). *See also Brewer v. Mullin*, No. 04-7404, 2005 WL 958495 (10th Cir. Apr.

---

[5]Unpublished dispositions are cited as persuasive authority pursuant to Tenth Circuit Rule 36.3.

27, 2005).  The DOC grievance policy also addresses what an inmate should do if he does not receive a response to a request to staff from prison officials.  The relevant policy provides:

> If there has been no response in 30 calendar days of submission, the inmate may file a grievance to the reviewing authority with evidence of submitting the "Request to Staff" to the proper staff member.

Defendants' MTD, Ex.  1, OP-090124, IV(B)(5).

In their motion to dismiss Defendants assert that although Plaintiff filed several requests to staff concerning the dietary issues raised in his complaint, he did not file any grievances during the relevant time period at JCCC, and he has therefore not exhausted his administrative remedies as to any claim raised in this action.  Defendants' MTD at 8 and 11-13; *see also* S.R. Att. 3 (Affidavit of Carol Dunham, JCCC grievance manager).  In his complaint, Plaintiff states that he has sought administrative relief and refers to certain attached requests to staff and an "Emergency/Sensitive Grievance."  Complaint at 5.   As discussed below, the record, as supplemented by the administrative materials in the Special Report, shows that Plaintiff has failed to exhausted his administrative remedies and Defendants are entitled to dismissal of the complaint on this basis.

After Plaintiff was placed on a vegetarian diet, he submitted a request to staff on December 27, 2004, to food supervisor Letourneau, stating that Arian had ordered that certain foods be left off his tray and that Letourneau was disregarding this order but allowing other inmates to receive special diets, which amounted to deliberate indifference in violation of the Eighth Amendment.  Complaint, Att. H.  In response, Plaintiff was informed that pursuant to prison policy Plaintiff would be provided a

7

restricted vegetarian diet and that any substitutions to such diet  would be according to the policy, with no exceptions.  *Id.*  There is nothing in the record reflecting that Plaintiff filed a grievance following the adverse response to this request to staff.

In another request to staff, dated December 29, 2004, which was directed to P.A. Arian, Plaintiff complained that Arian had voided the memo eliminating "pasta, rice and beans" from Plaintiff's diet.  Complaint, Att. D.  In response, Plaintiff was informed  that when Arian discussed the matter with food service supervisor Letourneau, "it was discovered that the statements made by you were false," and thus the diet menu was voided.  Plaintiff was warned that "[a]ny further manipulation of staff . . . can and will result in a misconduct being written."  *Id.*  There is no evidence that Plaintiff completed the grievance process with respect to this request to staff.

On January 24, 2005, Plaintiff filed a request to staff directed to Deputy Warden Chrisman, challenging Plaintiff's removal on January 19 from the restricted vegetarian diet for taking a meat tray .  Complaint, Att.  I.  There is no record of any response to this request to staff.  Although the DOC grievance system allowed Plaintiff to proceed to the next level, i.e., file a grievance to the facility reviewing authority (Warden Franklin) with evidence of an unanswered request to staff, OP-090124, IV(B)(5), there is no record that Plaintiff filed such a grievance.

Plaintiff did submit another request to staff to Warden Franklin on January 25, 2005, labeled "Emergency Request - Medicial (sic) an (sic) Health Issues," in which Plaintiff presented additional factual allegations regarding his diet but without any

reference to the January 24 request to staff. Complaint, Att. A.[6] In the January 25 request

to staff, Plaintiff alleged that he was a "true vegetarian," that he had never eaten meat,

that on January 19, 2005, correctional officers Blake and Letourneau unjustly accused

him of taking a meat tray, and that he wanted to be placed on a restricted vegetarian diet.

*Id. See also* Complaint, Att. F (memorandum dated January 19, 2005, from correctional

officer Letourneau instructing Chaplain Burrell to remove Plaintiff from the restricted

vegetarian diet).[7] Deputy Warden Chrisman responded to the request to staff on January

27, 2005, informing Plaintiff that he had "spoken to the departments named on [the]

request, and at this time they find no reason for you to receive a vegetarian diet tray."

Complaint, Att. B.[8] Chrisman informed Plaintiff that he would not receive a vegetarian

diet tray at JCCC, that the matter was closed, and that "[a]ny f[u]rther pursuit of this issue

on your part will result in disciplinary action." *Id.*

Thereafter, on January 31, 2005, Plaintiff submitted a grievance form marked

"Emergency"[9] to then DOC Director Ron Ward stating that he had been granted a

---

[6]On the same date Plaintiff submitted a request for medical services, requesting that his weight be monitored and that he be given multi-vitamins and a nutritional substitute. Complaint, Att. E. Medical staff scheduled a weight check for Plaintiff every two weeks for three months and denied his request for vitamins and Ensure. *Id.*

[7]In this request to staff Plaintiff further stated: "What they are providing me now I can not eat and will not eat especially when they have a veg[e]tarian diet here for me to eat." Complaint, Att. A (back of page). As relief, Plaintiff requested a meeting with the warden concerning the issue. *Id.*

[8]Chrisman stated that Food Supervisor Blake Culp observed Plaintiff taking a tray with meat on it and that Chaplain Burrell advised there was no religious reason for Plaintiff to receive a vegetarian diet tray. Complaint, Att. B.

[9]An inmate may bypass the first three steps of the grievance process if the complaint is of a sensitive or emergency nature. Defendants' MTD, Ex. 1, OP-090124, VIII(A). The policy allows the filing of a grievance directly with the administrative review authority "[i]f the complaint involves the [facility]

"restricted vegetarian" diet for religious reasons by Chaplain Burrell, that he had phobias of certain foods such as beans, rice and spaghetti from his experience as a POW in Vietnam, that he had been locked up for therapeutic observation,[10] that he had lost weight, from 154 pounds to 143 pounds, that he could not take his medications without food and that he had not taken a meat tray on January 19.   Complaint, Att. C.  Plaintiff requested he be allowed a vegetarian diet tray, without beans, rice and pasta.  *Id.* Plaintiff's "emergency" grievance was returned to him by the DOC Director's Designee with a letter dated February 8, 2005, informing Plaintiff that the grievance was "[n]ot of a sensitive/emergency nature," and that he "must follow the standard grievance process, including giving the facility an opportunity to respond." *Id.*   S.R., Att. 3 at p.  3.[11] Nothing in the record reflects any further attempts by Plaintiff to follow the DOC grievance procedure.  Instead, Plaintiff filed the instant complaint on February 18, 2005.

In summary, the record clearly shows that Plaintiff has failed to meet his burden to show that he exhausted the DOC administrative remedy process in connection with the claims raised in his complaint.  *See Jernigan*, 304 F.3d at 1032 ("An inmate who

---

reviewing authority and is of a sensitive nature or when substantial risk of personal injury or other irreparable harm exists." *Id.*

[10]*See* Complaint, Att. L (Segregation Housing Order dated January 14, 2005, placing Plaintiff in therapeutic observation.

[11]According to DOC policy:
A complaint of an emergency nature is one in which the complaint alleges irreparable harm or person injury will occur and which the grievance process will be unable to address in a timely preventive manner.  A complaint of a sensitive nature is one in which the complaint alleges misconduct by a staff member who either directly supervises the inmate/offender or is the reviewing authority where the inmate/offender is assigned.
Defendants' MTD, Ex. 1, OP-090124, VIII(A)(3).  *See also id.*, OP-090124, VIII (C) (upon reviewing authority's determination that grievance is not of sensitive/emergency nature, grievance is returned to inmate with notification of such and instruction that standard grievance process must be followed).

begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies."). In response to Defendants' motion, Plaintiff argues that his complaint should not be dismissed because he "has attempted" to exhaust his administrative remedies. Plaintiff 's "Respon[s]e to the Defendants Motion For Summary Judgement (sic)/Motion to Dismiss on Behalf of the Defendants Ward, Burrell, Frainklin [sic], Chrisman, Frech, Letourneau, Troutt, Arian, Bates, Jane, Redman, Culp, Salinas, and Parker, and Brief in Support" ("Plaintiff's Response") [Doc. No. 42] at 12. Plaintiff argues further that in responding to his January 25, 2005 request to staff, Deputy Warden Chrisman stated he considered the matter closed and threatened Plaintiff with disciplinary action if he continued to pursue the matter, *id.* at 13, and therefore, he "could only assume that his remedies were exhausted." *Id.* However, there is no indication that Chrisman's warning applied to Plaintiff's completion of the DOC grievance process; rather, he was being warned not to file additional new requests to staff regarding this same issue. In fact, after receiving Chrisman's response, Plaintiff filed yet another "emergency" request for a restricted vegetarian diet. Complaint, Att. C. There is no indication in the record that any disciplinary measures were imposed; rather, Plaintiff was advised to follow the standard grievance process, "including giving the facility an opportunity to respond." *Id.* Plaintiff clearly was not prevented from filing grievances, and thus, he has not shown that the Deputy Warden's comment rendered the administrative process unavailable to him.

Moreover, as the Tenth Circuit has made clear, there is no substantial compliance doctrine that accompanies § 1997e(a)'s exhaustion requirement. The grievance process

11

must not only be initiated, but it must be completed, and the inmate must cure any deficiencies in the course of submitting the grievance.  *Jernigan*, 304 F.3d at 1032; *see also Simmat v. United States Bureau of Prisons*, 413 F.3d 1225, 1237 (10th Cir. 2005) (in determining whether administrative remedy is available, question is not whether inmate "*felt* stuck" but whether he "*was* stuck" and because mechanism for administrative review existed, prisoner was required to use it) (emphasis in original).  The record demonstrates Plaintiff's failure to complete the grievance process in the manner made available through the DOC grievance system.  Therefore, it is recommended that Defendants' motion to dismiss be granted and the § 1983 complaint be dismissed without prejudice for failure to satisfy §1997e(a)'s exhaustion requirement.

III.  <u>Additional Matters Pending Before the Court</u>

     A.  <u>Plaintiff's Motion for Temporary Restraining Order and/or Injunction</u>

On April 7, 2005, after the complaint had been filed but before the Defendants had been served, Plaintiff filed a "Motion for Temporary Restraining Order and/or Injunction." Doc. No. 10.  In this motion, Plaintiff alleges that he was transferred from JCCC to OSR on February 17, 2005, "in retaliation [] for pursuing his 1st Amendment right to freedom of religion."  However, in support of his motion for injunctive relief,  Plaintiff focuses on dietary issues that arose at OSR, rather than the transfer itself.  Plaintiff's specifically requests that the Court order OSR prison officials to place him on a vegetarian diet for religious reasons and that Defendant Chrisman, JCCC Deputy Warden, be prohibited from interfering with Plaintiff's First Amendment rights.

To obtain a preliminary injunction under Fed. R. Civ. P. 65, the movant must show (1) a substantial likelihood of success on the merits of the case; (2) irreparable injury to the movant if the preliminary injunction is denied; (3) the threatened harm to the movant outweighs the injury that the proposed injunction may inflict upon the opposing party; and (4) the injunction, if issued, would not be adverse to the public interest. *Kikumura v. Hurley*, 242 F.3d 950, 955 (10th Cir. 2001); *Chemical Weapons Working Group, Inc. v. United States Dep't of the Army*, 111 F.3d 1485, 1489 (10th Cir. 1997); *Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir. 1980). Plaintiff has not satisfied the foregoing requirements.

First, with respect to Plaintiff's claim that Defendant Chrisman is retaliating against him by interfering with his First Amendment rights to exercise his religion at another prison facility, Plaintiff fails to demonstrate either a substantial likelihood of success on the merits or that he would suffer irreparable injury absent the issuance of an injunction. In support of this claim Plaintiff asserts only that after his transfer to OSR Food Supervisor Jack "Bear informed me he had talked with Jerry Chrisman - Deputy Warden of JCCC and a (sic) original defendant in this suite (sic) . . . ." Motion at 3 (Doc. No. 10). Based on this information, Plaintiff concludes that "Chrisman is continueing (sic) to influence people to deny me my religious diet." *Id.* Thus, Plaintiff relies on nothing more than his own speculation to support his claim of interference by Chrisman; therefore, his claim regarding actions by Chrisman is purely speculative and conclusory. Moreover, Plaintiff's unsupported belief that he may be subjected to unspecified actions in the future is insufficient to establish that he is in danger of irreparable harm. *See Johnson v. Saffle*, No. 99-6148, 2000 WL 130726, at *2 (10th Cir. Feb. 4, 2000) (affirming

13

the denial of a temporary restraining order "because plaintiff had failed to establish a threat of irreparable harm").  Because Plaintiff shows neither a likelihood of success on the merits nor irreparable injury with respect to his claim for injunctive relief against Defendant Chrisman, Plaintiff is not entitled to such relief.

Second, to the extent Plaintiff is requesting injunctive relief against officials at OSR, his motion should be denied because: (1) he has not shown a relationship between the injury he claims and the conduct asserted in his complaint, and (2) the requested injunction would purport to bind non-parties.  A preliminary injunction grants intermediate relief of the same character as that which may be finally granted.  *See De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945).  "Thus, a party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint."  *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994).

Here, Plaintiff's complaint addresses dietary issues he encountered at JCCC between August 6, 2004, and February 17, 2005.  In his request for injunctive relief, Plaintiff addresses matters at a different facility (OSR), involving dietary issues he has encountered since his transfer to that facility.  A preliminary injunction would be inappropriate to address wrongs separate from those raised in Plaintiff's complaint.

The requested injunctions would also bind non-parties.  Under Federal Rule of Civil Procedure 65(d), an injunction is only binding "upon the parties to the action . . ., [or] those persons in active concert or participation with them . . . ."  Fed. R. Civ. P. 65(d).  The rule entails proof of collusion or treatment of the OSR officials as the Defendants'

"alter ego."  *See Reliance Insurance Company v. Mast Construction Company*, 84 F.3d

372, 377 (10th Cir. 1996).  As previously discussed, Plaintiff has not supported his claim

that Defendant Chrisman is influencing OSR officials' conduct with respect to the

complained of actions at OSR.  Thus, Plaintiff has not established a relationship between

the requested preliminary injunction and the underlying civil rights claim, and he seeks

to bind non-parties without any supported claim of active concert or participation by the

named defendants.   Accordingly, Plaintiff's requests for injunctive relief should be

denied.

B.  Plaintiff's Motion for Leave of Court

Plaintiff has filed a "Motion for Leave of Court" ( Doc.  No.  23) seeking to

subpoena certain prison records concerning his hunger strike, logbook entries by officers

on 'A' unit, and prison medical department records because he believes that "altering of

said documents will occur[] prior to the Martinez Report."  Plaintiff offers no support for

his theory that any records included in the Special Report would not be accurate.  In any

event, if the recommendation that the complaint be dismissed for failure to exhaust

administrative remedies is adopted, Plaintiff's need for such documents would be moot.

For these reasons, it is recommended that Plaintiff's motion be denied.

C.  Plaintiff's Motion for Default

Plaintiff's "Motion for Default by the Court" (Doc. No. 25) cites Fed.  R.  Civ.  P.

55 and appears to request that the Court enter default judgment against Defendants for

failure to timely respond to the complaint. In support of his motion, Plaintiff alleges that

Defendants Ward and Chrisman and certain other individuals - B.J.Thomas, Carl Bear,

15

Lenora Jordan, and Michelle Cogburn[12] - were served by certified mail on April 8, 2005. According to Plaintiff, because the above named Defendants and individuals did not respond within 20 days, he is entitled to entry of default.  He further indicates that the failure to respond to his motion for injunctive relief also requires entry of default.

Defendants have filed a response to Plaintiff's motion, contending the fourteen served Defendants in the case are not in default, as the Court's order dated March 30, 2005, gave the responding parties 60 days after service of process to file an answer or dispositive motion.  Defendants also maintain that Plaintiff is not entitled to default judgment against Thomas, Bear, Jordan and Cogburn because these individuals are not named parties in the complaint.  Defendants are correct.

The Court generally favors resolution of disputes on the merits, recognizing the severity of a default judgment.  *See In re Rains*, 946 F.2d 731, 732 (10th Cir. 1991) (*per curiam*) ("Default judgments are a harsh sanction.").  A default judgment is ordinarily available only when "the adversary process has been halted because of an essentially unresponsive party."  *Id.* (quoted citation omitted).  Here, Plaintiff is not entitled to default judgment.

As Defendants correctly assert, by order dated March 30, 2005, the Court provided that each defendant had 60 days from the date of service in which to file an answer or dispositive motion.  *See* Doc. No.  8 (Order Requiring Service and Special Report). Plaintiff filed a praecipe for 14 summons to the Defendants named in the complaint.

_____

[12]Based on other pleadings filed by Plaintiff, "B.J. Thomas" is referring to "B.J. Thompson, D.O." These four individuals appear to be OSR prison officials, *see* Plaintiff's Motion for Temporary Restraining Order and/or Injunction [Doc.  No.  10] (Certificate of Mailing).

Counsel entered an appearance on behalf of the 14 named Defendants on May 4, 2005, and by order dated June 8, 2005, the Court granted Defendants' request for an extension of time, making the answer or dispositive motion due by June 21, 2005. [Doc.  No. 33]. Defendants timely filed a motion to dismiss/motion for summary judgment on June 15, 2005. [Doc.  No.  36].  Thus, Defendants are not in default and Plaintiff's request for default judgment should be denied. *See Moomchi v.  University of New Mexico*, No.  95-2140, 1995 WL 736292 (10th Cir.  Dec.  8, 1995) (upholding denial of motion for default judgment when the defendant filed a timely motion to dismiss under Fed.  R.  Civ. P. 12(5)(5) and (6)).  In addition, as previously discussed,  Plaintiff has failed to show that he is entitled to injunctive relief, and therefore, Plaintiff is not entitled to an entry of default on his claim for injunctive relief.

Additionally, Plaintiff is not entitled to default judgment against the individuals Thomas, Bear, Jordan and Cogburn.  Plaintiff neither named such individuals in his complaint nor completed service papers as to such individuals.   Therefore, such unserved, unnamed individuals are under no duty to answer or make other motions. *See* Fed.  R.  Civ.  P.  12(a)(1).  Plaintiff's request for default judgment against Thomas, Bear, Jordan and Cogburn should be denied.

In sum, it is recommended that Plaintiff's motion for default judgment be denied in its entirety.

D.  Plaintiff's Motion to Amend

In his "Motion for Leave of Court to Stay Proceedings to Amend the Original Complaint" [Doc. No. 34] Plaintiff alleges that since the filing of his complaint in this

case, he has been denied a vegetarian diet and is not receiving balanced or nutritious meals at prison facilities not named in the original complaint.  Specifically, Plaintiff seeks leave to amend his complaint pursuant to Fed. R. Civ. P. 15 to add claims against "other" unidentified officials at Lexington Correctional Center (LCC), where he is currently incarcerated.

Under Federal Rule of Civil Procedure 15(a), "leave [to amend] shall be freely given when justice so requires."  However, denial of a motion to amend is proper if the proffered amendments fail to cure the deficiencies of the original complaint or if any newly asserted claims would be futile.  *Scott v. Hern*, 216 F.3d 897, 906 (10th Cir. 2000); *see also Bauchman for Bauchman v. West High School*, 132 F.3d 542, 562 (10th Cir. 1997) (citing *Foman v.  Davis*, 371 U.S. 178 (1962)).

In this case, Plaintiff's proffered amendment would be futile.  First, Plaintiff asserts no facts in support of his claim that he has been denied nutritious meals at LCC.  Further, Plaintiff has failed to identify the prison officials against whom he was asserting this claim.  Moreover, the undersigned has concluded that the original complaint should be dismissed without prejudice for failure to exhaust his administrative remedies.  Plaintiff has likewise failed to allege or demonstrate that his additional claims have ever been presented to the prison authorities, much less that his administrative remedies with respect to these claims have been exhausted.  Accordingly, the undersigned finds that it would be futile to allow Plaintiff to amend his complaint and his motion to amend

18

should be denied.  *Scott*, 216 F.3d at 906.  Accordingly, it is recommended that Plaintiff's motion to stay proceedings to amend his complaint be denied.[13]

## <u>RECOMMENDATION</u>

For the reasons set forth above, the undersigned recommends that Defendant's motion to dismiss for failure to exhaust administrative remedies [Doc. No. 36] be granted and that Plaintiff's complaint under 42 U.S.C. § 1983 be dismissed without prejudice for failure to exhaust his administrative remedies as required by 42 U.S.C. §1997e(a).  As discussed above, it is recommended that the following motions filed by Plaintiff be DENIED:  Motion for Temporary Restraining Order and/or Injunction [Doc. No. 10]; "Motion for Leave of Court" [Doc.  No.  23]; "Motion for Default by the Court [Doc.  No. 25]; and "Motion for Leave of Court to Stay Proceedings to Amend the Original Complaint" [Doc. No. 34].

Plaintiff is advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court by the 3rd day of January, 2006, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1.  Plaintiff is further advised that failure to make timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal questions contained herein.  *Moore v. United*

---

[13]Of course, such denial would not preclude Plaintiff from filing a separate lawsuit, raising new claims against new parties.

*States*, 950 F.2d 656 (10th Cir. 1991).  This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

Entered this 12th day of December, 2005.


BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE